## George ·W. Macy *vs.* Mutual Marine Insurance Company

Under a policy attaching on a ship or its cargo at sea, there is no implied warranty of seaworthiness at the inception of the risk.

At the inception of the risk under a policy on cargo from the date of the policy to the end of the voyage, the ship was at sea in a very leaky condition, but carried her cargo to an intermediate port, was there condemned as unseaworthy from no subsequent peril, sold, and the cargo transhipped to another vessel. *Held,* that the underwriters were liable for a subsequent loss of the cargo before arrival at the port of destination.

Action of contract, brought in the county of Nantucket, on a policy of insurance, dated May 10th 1856, " lost or not lost, one thousand dollars on catchings, valued as in the margin, on board the Ship Barclay, commencing the risk on the 1st day of December 1855 at noon, to continue wherever she may go on a whaling voyage; with liberty to touch at all ports or places for refreshments, and to sell her catchings or ship them home at the risk of the assured ; " " beginning the adventure upon the said catchings as aforesaid, and to continue during the voyage afore· said, until the said vessel shall return and anchor at Edgartown or Hyannis, if she shall so return before July 13th 1856." The

case was submitted to the decision of the court upon the following facts, with liberty to draw such inferences as a jury might.

The Barclay sailed from Edgartown on the 13th of July 1852, properly manned and equipped and seaworthy. On the 1st of December 1855 she was at sea, leaking badly from previous stress of weather, and she was then, unless repaired, unseaworthy to prosecute her voyage, and was compelled to put away for a port. She arrived at Tahiti on the 9th of December, her cargo was discharged, the vessel hove out, and such repairs made as in the judgment of the master and surveyor rendered her seaworthy to pursue her voyage. She sailed again on the 6th of February 1856, and on the next day, without new cause of leak arising from the perils of the sea, was found to leak badly, the leak increased so as to be worse than the first time, and she was compelled to put back to Tahiti, where she arrived on the 10th of February, was surveyed and condemned as being incapable of repair, except at an expense utterly disproportioned to her value, (repairs at that port being very expensive,) and sold. The cargo was transhipped and lost by shipwreck on the passage home. No question is made as to the propriety of the condemnation and sale, the conduct of the master in transhipping the cargo, or the seaworthiness of the vessel on which the cargo was placed.

*S. Bartlett,* for the plaintiff. If this insurance had been on the ship instead of cargo, she being capable at the time fixed for the commencement of the risk, if then in port, of being made useful, with proper repairs, for navigation, and capable of reaching port in safety, she was a proper subject for a contract of insurance, and so the insurance attached, unless prevented by some implied warranty or condition. Under a policy attaching on a particular day in the course of a voyage already partly performed. there is by law no implied warranty of seaworthiness of the ship at the date of the policy or the commencement of the risk, but the underwriter takes the risk of her condition if she so exists as to be the subject of insurance. *Paddock v. Franklin Ins. Co.* 11 Pick. 231. *Capen* v. *Washington Ins. Co.* 12 Cush. 517. *Gibson* v *Small,* 4 H. L. Cas. 353. *Jenkins* v. *Heycock,* 8 Moore P. C. 351.

*Thompson* v. *Hopper*, 6 El. & Bl. 172. *Fawcus* v. *Sarsfield*, 6 El. & Bl. 192. 1 Phil. Ins. § 727.

Even if the above propositions are not sound, this being an insurance on cargo, to attach midway in the performance of a voyage, and the ship being at the time capable of transporting the cargo in safety to a port from which it could be properly transhipped to its port of destination, that cargo was in existence, safe and a proper subject of insurance; and insurance made on it, to take effect as above, if it carries with it any implied warranty of seaworthiness of the ship, cannot in degree extend beyond that which would enable the ship to land the cargo in safety and forward it to its port of destination in that or some other ship; so that if the ship in which it was insured was found at a port of refuge to be so injured as to be irreparable to complete her voyage, yet the policy would under such circumstances attach to the cargo.

*T. D. Eliot,* for the defendants. The facts agreed and the necessary inferences from them show that on the 1st of December 1855 the ship was wholly unseaworthy to prosecute her voyage, substantially and practically irreparable; that by reason of facts existing at that time, and without any intervening cause of loss, she was afterwards condemned; and that she could not be made seaworthy by suitable and reasonable repairs at the port of Tahiti, into which she put as a port of distress, and not as part of her voyage. The fact that at Tahiti repairs were very expensive, does not affect the existence of the fact (although unknown) that she was at the inception of the risk wholly unseaworthy and incapable of being made fit for navigation. 1 Arnould on Ins. § 244. 1 Phil. Ins. § 725.

This is not the case of a pure time policy for a definite period, the beginning and the end of which are stated in the contract. Nor is it a pure voyage policy; for although the risk is to continue " during the voyage," yet that is made to depend upon the termination of the voyage before July 13th 1856. But it is what Mr. Arnould calls a " mixed policy." 1 Arnould on Ins. § 155. Under such a contract of insurance the assured warrants to the underwriter that the vessel insured, or in which the cargo

was insured, was at the inception of the risk, if at sea, in such safe condition as to be a proper subject for a contract of insurance, and in such condition that she might, on her arrival at port, be made sufficient and seaworthy for her voyage by reasonable and suitable repair. 1 Arnould on Ins. § 249. *Paddock* v. *Franklin Ins. Co.* 11 Pick. 232. *Capen* v. *Washington Ins. Co.* 12 Cush. 539. The law of Massachusetts does not accord with *Gibson* v. *Small,* and other recent English decisions cited for the plaintiff.

A loss, in order to be chargeable to the underwriters, must be a loss attributable to a peril insured against, arising after the inception of the risk, and not to a defective or unseaworthy condition of the ship, existing prior to and at the time when the risk attached.

The loss in this case was not attributable to a peril insured against; because if the risk attached so far as to bring the subject insured within the protection of the policy as against cause of loss afterwards arising, yet the policy ceased to operate or to cover the cargo upon transhipment, if the vessel in which the cargo was insured was properly condemned and sold for a condition of unseaworthiness not produced by any subsequent peril, but existing at the time of the inception of the risk. Transhipment at the risk of the assured is a right secured by the policy but transhipment at the risk of the underwriter is only lawfui where the vessel in which the cargo is insured becomes disabled upon the voyage insured. The right to tranship is created by necessity ; but it is a necessity arising during the voyage which is the subject of insurance, not a necessity the immediate cause of which existed before the policy attached. In this case, it was proper to tranship, because the master, acting for the owners, could not otherwise protect their interests. But it does not follow that such transhipment must be under the policy or at the risk of the underwriters. Neither the defective condition of the ship at the inception of the risk, nor the good fortune of her reaching a port notwithstanding her defective condition, can confer on the assured the right to tranship on account of the underwriters.

This case was decided in June 1860.

BY THE COURT. As the ship was at sea at the commence· ment of the risk, there was clearly no warranty that she was then seaworthy. *Capen* v. *Washington Ins. Co.* 12 Cush. 517. Therefore the policy on the cargo and catchings did attach on the 1st of December 1855, the day named in the policy as the inception of the risk, the cargo not being then lost, and the vessel being capable of carrying and in fact afterwards carrying such cargo to a place of safety. The vessel was then found disabled to proceed further, and the master rightfully exercised his power as master to tranship the cargo at the risk of the insurers; and the cargo being lost on that voyage, it was a loss within the policy. *Judgment for the plaintiff.*